ON MOTION FOR REHEARING (AND MOTION FOR REHEARING OF CORRECTED OPINION)
PER CURIAM.
Upon consideration of appellees’ motions for rehearing, we withdraw this court’s previous opinion and substitute the following opinion. Appellees’ motion for rehearing is granted to the extent necessary to clarify a misstatement of the facts in this opinion as to the circumstances under which appellant acquired certain property. The motion is denied in all other respects.
Appellant, CMH Parks, Inc. (“CMH”) acquired certain property from First Union National Bank of Florida’s wholly owned *631 subsidiary, OREO, approximately one year after First Union foreclosed on a mortgage given by the previous owner, LCW Spence Development Corp. (“LCW”). LCW had planned to develop a mobile home park which would be called Silverado, and had obtained a $5,100,000 mortgage loan from First Federal — which was later held by First Union — in order to develop the property, which it had purchased from Colt Development Corp. (“Colt”) and Larry O’Steen, president of Colt, appellees here.[1]
At the time of the original sale in 1986, and before LCW obtained the development loan, Colt and O’Steen had recorded certain covenants and restrictions retaining the exclusive right to provide water and- sewer service to the property for 20 years. Colt was to provide sewer service, and subsequently assigned its right to provide that service to Neighborhood Services, Inc. (“NSI”). NSI intended to construct a sewage treatment plant to serve Silverado and adjoining properties, but ultimately did not do so because the City of Jacksonville extended its system to a point where it was accessible to the property.
LCW originally agreed to pay sewer plant connection charges to Colt (as predecessor to NSI) in the amount of $247,500, representing $550 per unit for 450 units. LCW paid $110,-000 of the amount shortly after the 1986 closing. In August, 1987, NSI requested payment of the remaining $137,500. LCW paid NSI $127,575, which NSI deposited and on the same day wrote a check to the City for $127,575 for WPC or water pollution control charges, which are the charges for connection to the City sewer system. At that time, the City charged $283.50 per unit. The payment of $127,575 covered 450 units. The following notation appeared on NSI’s cheek to the City: “LCW Spence Development Co. Sewer Pollution Fees Chaffee Rd. Mobile Home Park.”
In October, 1987, an amendment to the original agreement had documented the fact that the City, rather than NSI, would be providing sewer service. In November, 1987, LCW paid the remaining $9,925, so that at that time, the entire $247,500 had been paid. LCW paid these amounts from its development loan.
The original agreement regarding sewer service was amended several times. According to the December, 1986 Addendum to the Agreement, LCW would prepay to NSI the estimated costs associated with construction of all cross-country and off-site lines required to deliver sewer service to the property, as well as for installation of collection lines, pipes, manholes, lift stations, pumps, valves, and other apparatus. The attached schedule showed that the estimated costs were $500,-000 for the site collection system and $137,-500 ($247,500 less 110,000 already paid) for sewer capacity charges. A $500,000 note was executed for the site collection system.
According to the Supplemental Utility Agreement of October, 1987, the City rather than NSI would be providing sewer service. The agreement provided that the $500,000 note executed in December, 1986, would be cancelled. According to the Second Supplemental Utility Agreement of December, 1988, the $500,000 note was cancelled. Further:
In consideration of the renegotiation of the terms of the Sewer Utility Agreement as reflected herein, all interest and penalties due to NSI from LCW pursuant to the aforesaid $137,500 demand note be and hereby are forgiven, and NSI acknowledges the previous payment in full of the principal amount by LCW.
Only fifteen of the 450 units purchased were connected before LCW ceased developing Silverado. NSI had assigned its right to provide sewer service back to Colt, and subsequently was dissolved. In 1990, Colt and O’Steen sued LCW for breach of the various agreements, alleging LCWs failure to construct and dedicate certain horizontal improvements, including sewer lines. LCW counterclaimed alleging breaches by Colt, however, the suit eventually was dismissed for lack of prosecution.
*632 In 1994, First Union foreclosed on the development loan, and CMH subsequently purchased the property as indicated above. The City proposed to refund the fees paid for unused sewer capacity. Appellant and appel-lees both asserted ownership of the 435 unused units on the property. If appellees were entitled to the units, and could use them on adjoining property, appellant, CMH, would be required to pay current city connection charges of $1,025.50 per unit, significantly higher than the charges originally paid. The City filed this interpleader action to determine the rightful owner of the unused units.
After determining that the facts were undisputed, the circuit court granted summary judgment in favor of appellees. The court determined that pursuant to the agreement and amendments, NSI had guaranteed LCW availability of 450 units of sewer capacity, which the court equated with plant connection charges or WPC, and that NSI had purchased 450 units from the City, which were held in NSI’s name. Further, the court found that LCW never contested NSI’s entitlement to hold the units in its name pursuant to the agreements, and even if Colt/ O’Steen had defaulted under the agreements, the initial developers had a right to request a refund of payments for sewer capacity, but did not do so, and no longer had that right due to passage of the limitations period.
Briefly summarized, appellant, CMH, argues primarily that the August, 1987 letter and checks show that NSI merely acted as a pass through for payment of the WPC charges to the City, and that LCW reasonably believed it was buying 450 units for the Silverado property when it wrote its check for $127,575 to NSI. Appellees contend the agreements control the outcome of the case, and show a clear intent that they would have the exclusive right to provide sewer service for 20 years. Further, appellees contend that although construction of a sewer plant was originally intended, it was not a prerequisite to providing sewer service. Appellees contend they were released from the obligation to provide plant in the second supplemental agreement, and that LCW was aware of any breach that had occurred by 1990, when suit was filed, thus the statute of limitations barred appellant from asserting the rights of the original developers under the agreements. CMH responds that because LCW reasonably believed it owned the units purchased, the statute of limitations did not begin running when development ceased.
Summary judgment is improper if, viewing the record in the light most favorable to the party against whom summary judgment has been entered, “the record raises the slightest doubt that material issues [of fact] could be present.” See Thompson v. Gallo, 680 So.2d 441, 443 (Fla. 1st DCA 1996), and cases cited therein. We conclude that the summary judgment in this case must be reversed. The trial court found that the statute of limitations ran out in 1995, five years after the 1990 litigation, apparently on the theory that appellant was aware of any breach by appel-lee as of the filing of that lawsuit, and that under the agreements, appellant should have proceeded to request a refund for unused sewer capacity at that time. However, if appellant believed NSI was holding the unused units for its benefit, it had no reason to request a refund at that time. Therefore, we believe the question whether the statute of limitations bars CMH’s claim depends on whether LCW reasonably believed the 435 units were being held by NSI for its benefit, and further fact finding is required in order to resolve that question.
In addition, although the court found that “the Second Supplemental Utility Agreement (RE Sewer) expressly released NSI from the obligation to construct a sewer treatment plant while requiring the initial developers to pay to NSI the funds to purchase the sewer capacity in question from the City,” this finding does not clearly address the question whether LCW reasonably believed the payment was in the nature of a pass-through, and that NSI was holding the unused units for its benefit. Along with further consideration of the limitations question, clarification is required as to the effect of the amendments to the original utility agreement.
We also reverse as premature the award of attorneys’ fees based on wrongful conduct.
*633 REVERSED and REMANDED for further consistent proceedings.
BOOTH, JOANOS and WOLF, JJ., concur.

. The original sale involved two parcels of property; one owned by Larry O’Steen individually, and one owned by his company, Colt Development Corp. O’Steen appears in this appeal as trustee for NSI, of which he also was president, and which has been dissolved.